**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF PIONEER RECOVERY FUND LP and CHAMPLAIN INVESTMENT HOLDINGS LTD. TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>                Applicants. | Case No. 1:20-mc-0293 |

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF**
**PIONEER RECOVERY FUND LP and CHAMPLAIN INVESTMENT HOLDINGS LTD.**
**TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Ropers Majeski, P.C.
750 Third Avenue, 25th Floor
New York, New York 10017
(212) 668-5927

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

PRELIMINARY STATEMENT........................................................................................ 1

RELEVANT BACKGROUND......................................................................................... 3

ARGUMENT ................................................................................................................... 8

I. APPLICANTS HAVE SATISFIED THE THREE
STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ....................................... 8

A. Respondents Are All Found in the Southern District of New York............................... 9

B. The Discovery Sought Is for Use in a Proceeding Before a Foreign Tribunal............. 10

C. Applicants are Interested Persons to the Foreign Proceedings.....................................11

II. THE DISCRETIONARY *INTEL* FACTORS SUPPORT
GRANTING THE APPLICATION......................................................................................11

CONCLUSION................................................................................................................ 16

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ................................................................................. 9, 14

*Eco Swiss China Time Ltd. v. Timex Corp.*,
   944 F. Supp. 134, 137 (D. Conn. 1996) .................................................................. 14

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F .3d 1095 (2d Cir. 1995).................................................................................. 14

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998)...................................................................................... 15

*Gushlak v. Gushlak,*
   486 F. App'x 215 (2d Cir. 2012) .............................................................................. 1

*In re Alianza Fiduciaria S.A.*,
   No. 13-81002-MC, 2013 WL 6225179 (S.D. Fla. Oct. 24, 2013) ........................... 13

*In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 US.C.
   1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397(PGG), 2014
   WL 7232262, (S.D.N.Y. Dec. 10, 2014).................................................................. 12

*In re Application of Hill*, No. M19-l 17(RJH),
   05CV999996, 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ..................................... 14

*In re Application of HydroDive Nigeria, Ltd.,*
   No. 13-MC-0477, 2013 WL 12155021 (S.D. Tex. May 29, 2013)……………………………10

*In re Application of Republic of Kaz. For an Order Directing Discovery from Clyde & Co. LLP
   Pursuant to 28 USC.§ 1782,* 110 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................ 12

*In re Application Pursuant to 28 US. C. § 1782 for an Order Permitting Christen Sveaas to Take
   Discovery from Dominique Levy, L&M Galleries and Other Non-Participants for Use in
   Actions Pending in Norway,* 249 F.R.D. 96 (S.D.N.Y. 2008) ................................. 10

*In re Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28
   U.S.C. § 1782*, No. 12 MC 221(RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)............. 13

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement
   du Mais,* No. 13-mc-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ................ 11

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C.*
    *§ 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-mc-417
    (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016) ...................................................... 13

*In re Hornbeam Corp.,*
    No. 14 Misc. 424, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ........................................... 1

*In re Iraq Telecom Ltd.*, No. 18MC458LGSOTW, 2019 WL 3798059 (S.D.N.Y. Aug. 13,
    2019), *reconsideration denied,* No. 18MC458LGSOTW, 2019 WL 5080007 (S.D.N.Y. Oct.
    10, 2019) ................................................................................................................................. 14

*In re Owl Shipping*,
    2014 WL 5320192 (D.N.J., 2014) ......................................................................................... 14

*Intel Corp. v. Advanced Micro Devices, Inc,*
    542 U.S. 241 (2004) ......................................................................................... 2, 12, 13, 15

*London v. Does* 1-4,
    279 F. App'x 513, 515 (9th Cir. 2008)

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ................................................................................................ 1, 11

*Minatec Finance S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT),
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................................................................ 15

## <u>Statutes</u>

28 U.S.C. § 1782 ...................................................................................... 1, 2, 6, 8, 10, 11, 12, 13

Applicants Pioneer Recovery Fund LP ("the Fund") and Champlain Investment Holdings Ltd. ("Champlain" and together, "Applicants") respectfully petition this Court *ex parte*[1] for an order pursuant to 28 U.S.C. § 1782 authorizing them to take discovery, in the form of the attached subpoenas *(see* Declaration of Blaise U. Chow dated August 21, 2020 (the "Chow Dec.") at Exhibits A-E) from 10 East 63rd Street, Inc., Amanda Wilson, Pedro Santiago, Astrid Pillay and Charles Holzer (together, "Respondents"), persons and/or entities found in the Southern District of New York, for use in a foreign proceedings in the Commonwealth of the Bahamas.

## PRELIMINARY STATEMENT

This Application stems from a series of purported frauds perpetrated by the late Mr. Lance Valdez and subsequent directors and officers of the Fund, who used the Fund as the instrument of a fraud perpetrated against the Fund's founder, Vermeer Investments Limited ("Vermeer"). These alleged frauds are central to a proceeding to be brought by the Applicants in the Supreme Court of the Commonwealth of the Bahamas (the "Foreign Proceeding")[2], which will be initiated against thirteen separate defendants, including the parties from whom discovery is sought by this Application, 10 East 63rd Street, Inc. ("10 East 63rd"), Amanda Wilson ("Wilson"), Pedro Santiago ("Santiago"), Astrid Pillay ("Pillay") and Charles Holzer ("Holzer"). In the Foreign Proceeding, the Applicants (as plaintiffs) will allege, among other things, that the Fund's assets (all of which were contributed by Vermeer) were invested in ways that benefitted Mr. Valdez and/or his family

---

[1] Courts in the Second Circuit routinely handle § 1782 requests on an *ex parte* basis. *See, e.g., In re Hornbeam Corp.,* No. 14 Misc. 424, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015) (collecting cases, and noting that "[d]istrict courts may and customarily do resolve applications for discovery pursuant to § 1782 through *ex parte* proceedings" and that there is "widespread recognition that § 1782 applications are properly handled *ex parte"); see also Gushlak v. Gushlak,* 486 F. App'x 215,217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *In re Application of Esses,* 101 F.3d 873 (2d Cir. 1996); *In re Application of Aldunate,* 3 F.3d 54 (2d Cir. 1993).

[2] While the Foreign Proceeding has not been initiated yet, a party "has satisfied § 1782's 'for use' requirement by showing that the materials [they] seek[] are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below." *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015).

and/or related parties undisclosed personal interests and were not designed or intended to benefit the Fund or its sole investor .

As explained below, Wilson and 10 East 63rd are parties who are located in the Southern District of New York and are named defendants in the Foreign Proceeding. 10 East 63rd Street, Inc. is an entity which owns a property located in New York in which the Fund was invested. Amanda Wilson is the Chief Executive Officer of 10 East 63rd Street, Inc. Santiago, Pillay, and Holzer, while not defendants in the Foreign Proceeding, are believed to have information regarding a transaction central to the Foreign Proceeding. Upon information and belief, Santiago is Vice-President of 10 East 63rd Street and Pillay served as a broker in the sale of the property owned by 10 East 63rd. Holzer was a close friend of the late Mr. Valdez and is believed to have caused or directed the Fund to sell assets at a substantial undervalue. Respondents therefore all possess knowledge and information highly relevant to the Foreign Proceeding. Each of Santiago, Pillay and Holzer are located within the Southern District.

For the reasons set forth below, this Section 1782 Application should be granted. First, it meets the statutory requirements for a Section 1782 application because Respondents are each "found" in this District and the discovery sought is "for use" in foreign proceedings in which Applicants are "interested persons." Second, the discretionary factors that apply in determining whether to grant an application, as articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc,* 542 U.S. 241 (2004) all favor granting this Section 1782 Application. Accordingly, Applicants respectfully request that the Court grant them permission to take discovery from each of the Respondents.

The Fund is an investment fund established as a Cayman Islands exempted limited partnership in November 2008 by the late Mr. Lance Valdez (¶ 17). The general partner of the Fund is Pioneer GP Limited ("Pioneer GP"), a Cayman Islands company formed for that sole purpose (¶ 1). Crescent Advisors, Ltd ("Crescent") was the original general partner of the Fund. Following Mr Lance Valdez's death and the discovery of matters of concern, at Vermeer's request the general partner was replaced by Pioneer GP

When the Fund was founded, Vermeer Investments Limited ("Vermeer"), a Cayman Islands company, committed $10 Million to the Fund (¶ 19). Vermeer is and was at all material times the sole limited partner in the Fund (*id*.). Pioneer Investment Management Ltd, ("Pioneer IML"), a defendant in the Foreign Proceeding, is a Bahamian company that acted as investment manager to the Fund (¶ 6).

According to the Fund's offering memorandum (the "Offering Memorandum"), the Fund's business was making opportunistic investments in debt, debt-related and equity securities and other financial instruments of companies in distressed or other special situations as well as structured investments in US and non-US real estate, equipment or other assets (¶ 20).

Commencing with Vermeer's investment in the Fund, Pioneer IML and Mr. Valdez created and invested the Fund's assets in a complex structure of companies, partnerships, debt instruments and transactions spanning multiple jurisdictions and legal regimes (¶22). Up to the date of his death, Mr. Valdez provided Vermeer with regular updates on the status and performance of the Fund's investments, always advising that the investments were performing very well and were expected to yield great returns (*id*). However, it now appears that the Fund's assets were principally

---

[3] Unless stated otherwise, citations in this section are drawn from the allegations set forth in the proposed Writ of Summons to be filed in the Foreign Proceeding. *See* Chow Dec., Ex. F.

invested in ways that served Mr. Valdez's undisclosed personal interests and provided him and his family (and perhaps others) with liquidity that they otherwise did not have (*id*).

Mr. Valdez was killed in a helicopter crash on November 22, 2012, and was survived by his wife, Dasha Valdez (¶ 23). Soon afterwards, Pioneer IML advised that it had appointed two individuals to act as investment advisors, Holzer and Alex Schmid (*id*.).

By the date of Mr. Valdez's death, Vermeer had contributed 90% of the $10 Million in capital that it had committed for investment in the Fund (¶ 24). At the time of Mr. Valdez's death, the largest single investment of the Fund (the "Subacu investment") was an indirect interest in a valuable residential property at 10 East 63rd Street in New York City (the "New York Property") (¶ 26). The Fund paid $3,036,000 to acquire an 80% participation in a loan of $3,795,000 advanced to a Hong Kong company and repayable on November 30, 2011 (¶ 27). At that time Hong Kong Company held 100% of the class B shares in a British Virgin Islands company, which in turn held 50% of the shareholding in 10 East 63rd (another named defendant), which in turn owned the New York Property (*id*.). 10 East 63rd is an active corporation formed under the laws of the State of New York (*see* Chow Dec., Ex. G). Amanda Wilson, also a named defendant in the Foreign Proceeding, is the Chief Executive Officer of 10 East 63rd Street, Inc., according to the New York State Department of State, Division of Corporations (*id*.). Upon information and belief, Pedro Santiago was the vice-president of 10 East 63rd Street at all times relevant to the Foreign Proceeding. Santiago held himself out as the 10 East 63rd's vice president in an affidavit filed in the Supreme Court of the State of New York on August 16, 2013 (*see* Chow Dec., Ex. L).

The loan appears to have not been repaid on November 30, 2011, and the Fund's investment in the loan was restructured (¶ 30). As a result, the Fund was initially advised by Pioneer IML in January and August of 2011 that it held a 40% economic interest in the net equity of the New York

Property (¶ 31). However, in subsequent updates (and after Vermeer had invested the additional $1 Million), the Fund was advised that it held a reduced economic interest of just 30% of the net equity in the New York Property (*id.*). The remaining economic interest in the New York property is believed to be held by Mr. Valdez and his wife, Mrs. Dasha Valdez or related parties to them, through companies ultimately owned or controlled by them (¶33). Despite numerous requests submitted to Pioneer IML and the investment managers appointed to replace Mr. Valdez, no evidence was ever provided to substantiate or explain the dilution or reduction in the Fund's interest in the New York Property (¶ 49).

At the time of Mr. Valdez's death, the most recent independent valuation of the New York property was as at November 2011, which concluded that the New York property had an estimated market value on the order of US$21.15 Million. New York City department of finance filings also suggest that the New York property was subject to a mortgage securing a loan of about US$8 Million. At that time, the value of the Subacu investment was therefore approximately either US$3.945 Million (30% of US$13.15 Million) or US$5.26 Million (40% of US$13.15 Million). New York property prices have significantly increased since then (¶ 32).

The Fund's investments also included 7,000 class B shares in ESO Prop Corp Ltd, ("ESO") a Cayman Islands company (the "ESO Investment") (¶ 38). Ownership of the shares gave the Fund exposure to ESO's participation in ESO Credit Co Sarl, a Luxembourg investment company (*id.*). The Fund invested a total of $969,680 in the ESO Investment (*id.*). Mr. Schmid and (until his death) Mr. Valdez were directors of ESO (¶ 39).

In 2013, without informing or consulting Vermeer, the Fund proceeded to sell its investment in the New York Property and ESO Investments (¶ 61). The Fund's stake in the New York Property was valued at $3,528,466 as of March 31, 2013; the ESO Investment was valued at

$969,680 as of March 31, 2013 (*id*.). On May 31, 2013, draft term sheets were prepared for the sale of both the New York Property investment and ESO Investments to Liberty Financial Group Ltd ("Liberty"), a British Virgin Islands company (¶ 63). The proposed prices were $350,000 and $240,000 respectively (*id*.). In both cases the sale price was far less than the value at which the investments were held in the Fund's books and the Fund realized a significant loss (¶ 61). An investigation by the Applicants (the Foreign Proceeding Plaintiffs) revealed that Liberty was, from 31 May 2013, ultimately owned by friends or relations of Holzer, and that Holzer conspired with others to cause the Fund to sell the ESO Investments at a substantial undervalue (¶ 65). The investigation also revealed that the New York Property had, at times, been occupied by Mr. Lance Valdez and/or Mrs. Dasha Valdez and/or Mr. Lance Valdez's brother, Mr. Omar Valdez, for personal use (*id*.).

On June 25, 2013, the Fund entered into definitive purchase agreements as envisaged by the term sheets (¶ 64). In mid-August 2013, Vermeer requested that Crescent be replaced as the general partner of the Fund with an independent entity, Pioneer GP Limited (¶ 73). The replacement became effective in October 2013 (*id*.). Subsequently, the investment management agreement between the Fund and Pioneer IML was purportedly terminated by Pioneer IML (¶ 75). The management of the assets in the Fund then became the responsibility of Pioneer GP (*id*.).

On September 22, 2014, Pioneer GP and the Fund via their US based attorneys submitted to the United States District Court – Southern District of New York an Application for an Order pursuant to 28 U.S.C 1782, to take expedited discovery from Holzer (¶ 78). On September 25, 2014, such application was granted (Chow Dec., ¶ 12 and Ex. J). Holzer was served with a subpoena at his residence at 233 East 62nd Street in New York County, where, upon information

and belief, he continues to reside (Chow Dec., ¶ 13 and Ex. K). On November 6, 2014, Pioneer GP and the Fund's US based attorneys deposed Holzer (¶ 79).

The Fund has repeatedly attempted to seek further information on the sale of the investment in the New York Property (¶ 82). These investigations have uncovered that according to the New York Department of Finance records, in March 2016, the New York Property[4] was sold to Griffen Holdings Services (**"Griffen"**) a British Virgin Islands company (the "Property Sale") (¶ 84). Further investigations suggest that the sale price net of debt recorded for the Property Sale was $14,228,500.00 (*id.*). As mentioned above, the estimated gross value of the New York Property in November of 2011 was $21.15 million, and New York Property prices have only risen since then (*id.*). Therefore this "sale" of the New York Property appears to have been carried out at a substantial undervalue (*id*) or sold net of debt, and material value is due and remains unpaid to the Applicants. Upon information and belief, Respondent Astrid Pillay served as the real estate broker for the Property Sale (*see* Chow Dec. at ¶ 11 and Ex. I).

In the Foreign Proceeding the Applicants claim that from the date of its founding by Mr. Valdez, the Fund was used as the instrument of a purported fraud perpetrated against Vermeer, in that the Fund's assets (all of which were contributed by Vermeer) were invested in ways that benefitted Mr. Valdez and/or his family and/or related parties, undisclosed personal interests and were not designed or intended to benefit the Fund or its sole investor (¶ 86). Following Mr. Valdez's death, the Fund (until control thereof was passed to Pioneer GP) and the other companies were used by Mrs. Valdez and others to continue that alleged fraud with the purpose of securing the Fund's assets or the value thereof for themselves at the expense of the Fund and/or its sole

---

[4] It is not clear to Applicants whether the New York Property was sold or whether the company owning the New Property, 10 East 63rd Street, Inc., was itself sold. This is one of many issues Applicants seek clarity on via the discovery sought by the instant application.

investor (*id.*). When control of the Fund was passed from Crescent to Pioneer GP, the Fund itself became the victim of the purported fraud (*id.*).

By this Application, Applicants seek deposition testimony from Amanda Wilson in her individual capacity and in her capacity as CEO of 10 East 63rd Street, Inc. Applicants further seek deposition testimony from Santiago, as vice-president of 10 East 63rd during the times relevant to the Foreign Proceeding, and from Pillay as broker of the Property Sale. Applicants also seek deposition testimony from Holzer, who upon information and belief helped facilitate the sale of Fund assets at a substantial undervalue. Moreover, Applicants seek the production of documents relevant and necessary to the Foreign Proceeding from each of the Respondents, including documents and communications relating to and identifying directors and officers of the Fund and any entities in which the Fund invested, financial statements and information relating to the Fund and its investments, documents relating to any transactions involving the New York Property, and other categories of documents and information as set forth in the subpoenas substantially in the form of those attached to the Chow Dec. as Exhibits A through E.

## ARGUMENT

The Court should grant this Application because Applicants satisfy all of the statutory prerequisites for a 28 U.S.C. § 1782 action, and the discretionary factors all favor granting this Application.

## I.
## APPLICANTS HAVE SATISFIED
## THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Section 1782 of Title 28 of the United States Code permits an applicant to obtain discovery "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." *See* 28 U.S.C. § 1782. In order to obtain discovery under the

statute, an applicant must satisfy three statutory prerequisites: "(l) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see also* 28 U.S.C. § 1782. Section 1782 "has, over the years, been given increasingly broad applicability." *See Brandi-Dohrn*, 673 F.3d at 80. Applicants here easily satisfy all three of Section 1782's statutory requirements.

### A.     Respondents Are All Found in the Southern District of New York

Each of the Respondents, upon information and belief, are found within the geographical boundaries of the Southern District of New York.

According to the New York State Department of State, Division of Corporations, Amanda Wilson is the Chief Executive Officer of 10 East 63rd Street, Inc. with a principal place of business located at 10 East 63rd Street, New York, NY 10065. *See* Chow Dec., ¶ 9 and Ex. G. Upon information and belief, Ms. Wilson resides with the Southern District of New York and can be served with discovery at her place of business. 10 East 63rd Street, Inc. therefore likewise is found with the Southern District of New York and can be served via the New York Secretary of State.

Upon information and belief, Pedro Santiago was the vice-president of 10 East 63rd at all times relevant to the Foreign Proceeding and continues to serve in that capacity, and can therefore be served at his place of business (*see* Chow Dec., ¶ 14 and Ex. L). Upon information and belief, Astrid Pillay served as a real estate broker for the Property Sale (*see* Chow Dec., ¶ 11 and Ex. I) and resides within the Southern District of New York. Upon information and belief, Pillay is employed by Halstead Manhattan, LLC, with a principal place of business located at 770 Lexington Avenue, 4th Floor, New York, NY 10021 (Chow Dec., ¶¶ 10,  Ex. H). Charles Holzer

was previously served with discovery pursuant to an application pursuant to 28 U.S.C. § 1782 granted by this Court, and Holzer was successfully served at his residence at 233 East 62nd Street in New York County, where, upon information and belief, he continues to reside (Chow Dec., ¶¶ 12-13 and Exs. J and K).

**B.      The Discovery Sought Is for Use in a Proceeding Before a Foreign Tribunal**

The requirement that the discovery sought be for use in a proceeding before a foreign tribunal, known as the "for use" requirement, imposes only a "de minimis" burden upon applicants. *See In re Application of HydroDive Nigeria, Ltd.,* No. 13-MC-0477, 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013). An applicant satisfies this requirement by making a showing that the application seeks relevant information, and courts within this District have interpreted the relevance requirement as "broadly permissive." *See, e.g., In re Application Pursuant to 28 US. C. § 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries and Other Non-Participants for Use in Actions Pending in Norway,* 249 F.R.D. 96, 107 (S.D.N.Y. 2008).

Here, each 10 East 63rd and Wilson are each named defendants in the Foreign Proceeding, which will be initiated in the Commonwealth of the Bahamas. *See* Chow Dec. at ¶ 8 and Ex. F. Santiago, like Wilson, is an officer of 10 East 63rd, and Pillay was substantially involved in the sale of the New York Property, owned by 10 East 63rd. *See* Chow Dec. at ¶¶ 11, 14 and Exs. I and L.   According to an investigation performed by Applicants, Holzer was a close friend of Mr. Valdez and conspired to sell assets of the Fund at a substantial undervalue. Ex. F, ¶ 65.  As set forth above (*see* fn. 2, herein), While the Foreign Proceeding has not been initiated yet, discovery pursuant to 28 U.S.C. § 1782 is permissible because Applicants seek documents and testimony

that "are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below." *Buiter*, 793 F.3d at 301.

The discovery sought from the Respondents include corporate and financial records of the Fund and entities in which the Fund has invested, documents identifying the directors and officers of any entities relating to the Fund, communications involving those persons, lists of investors in the Fund, and other documents that would show how Lance Valdez, his wife, and his associates utilized the Fund for his own benefit to the detriment of Vermeer and other investors. *See* Chow Dec., Exs. A-E. These documents and information go to very heart of the Foreign Proceeding.

### C.  Applicants are Interested Persons to the Foreign Proceedings

Finally, Applicants are "interested persons" for purposes of Section 1782 because, as mentioned above, they are parties to these foreign proceedings. *See In re Esses,* 1 01 F.3d at 875. Parties to the foreign proceedings necessarily are "interested persons," and likewise, one who files a criminal complaint qualifies as an "interested person." *See, e.g., In re Application for an Order Pursuant to 28 US. C. § 1782,* 773 F.3d at 462 (granting Section 1782 discovery to complaining witness in foreign criminal investigation); *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais,* No. 13-mc-0266, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) (noting that the "statute's text makes plain that interested person reaches beyond litigants to include complainants" (internal quotation marks omitted)).

## II.
### THE DISCRETIONARY *INTEL* FACTORS SUPPORT GRANTING THE APPLICATION

In addition to considering whether an applicant has met Section 1782's statutory requirements, the Court must exercise its discretion to determine whether to grant the application "in light of the twin aims of the statute: providing efficient means of assistance to participants in

international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *See In re Application of Republic of Kaz. For an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 USC.§ 1782,* 110 F. Supp. 3d 512, 516 (S.D.N.Y. 2015). In exercising its discretion, the Court must also consider the following discretionary factors outlined by the Supreme Court in *Intel:* "(1) whether the person from whom discovery is sought is not a participant in the foreign proceeding, which militates in favor of granting the request; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the [Section 1782] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and ( 4) whether the request is unduly intrusive or burdensome." *Id.; see also Intel,* 542 U.S. at 264-65. Here, all four *Intel* factors weigh in favor of granting Applicants their requested discovery.

*First*, a person's "involvement in the [foreign] [p]roceedings is not dispositive as to the first *Intel* factor." *In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 US.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397(PGG), 2014 WL 7232262, at \*6 (S.D.N.Y. Dec. 10, 2014) (denying motion to vacate order authorizing Section 1782 discovery from party to foreign proceeding), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016). Rather, courts considering this factor look to whether, "absent this discovery, the evidence sought may be unattainable by the [foreign tribunal] while it is within the district court's jurisdiction and accessible in the United States." *London v. Does* 1-4, 279 F. App'x 513, 515 (9th Cir. 2008); *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign*

*Proceedings*, No. 15-mc-417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016) (agreeing that the weight of authority confirms that "the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application").

Here, given that none of the Respondents are residents of the Bahamas, there are serious concerns that necessary discovery may be unattainable in the Foreign Proceeding, so this factor weighs in favor of discovery from each of the Respondents. *See In re Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 12 MC 221(RPP), 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (notwithstanding that respondent was party to foreign proceeding, ruling that "in light of the fact that the materials which [applicant] seeks would be unavailable but for § 1782 assistance, the first *Intel* factor weighs against quashing [applicant's] subpoena [issued under§ 1782]"). Moreover, the nature of the fraudulent conduct at issue raises concerns about evidence spoliation – granting the Application would help ensure that relevant evidence in Respondents' possession, custody, and control is preserved and collected. *See In re Alianza Fiduciaria S.A.*, No. 13-81002-MC, 2013 WL 6225179, at *2, *4 (S.D. Fla. Oct. 24, 2013) (granting Section 1782 discovery where the applicants contended that such discovery was proper due to concerns "about the potential destruction of evidence due to the contentious nature of the litigation").

*Second*, the character and nature of the Foreign Proceeding weighs in favor of granting the Application. There is no suggestion that the foreign tribunal would not be receptive to this Court ordering such discovery. Importantly, the Second Circuit has instructed that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782." *Euromepa S.A. v.*

*R. Esmerian, Inc.*, 51 F .3d 1095, 1100 (2d Cir. 1995); s*ee also In re Owl Shipping*, 2014 WL 5320192, *3 (D.N.J., 2014)   ("Parties that apply for discovery under [Section 1782] enjoy a presumption in favor of foreign tribunal receptivity .... "). There can be no such proof here, and indeed courts routinely order Section 1782 discovery for use in proceedings similar to those at issue in2014) this case. *See, e.g., In re Vale S.A.*, No. 20MC199JGKOTW, 2020 WL 4048669, at *2 (S.D.N.Y. July 20, 2020) (granting § 1782 application seeking discovery for foreign proceeding alleging fraud); *In re Iraq Telecom Ltd.*, No. 18MC458LGSOTW, 2019 WL 3798059, at *2 (S.D.N.Y. Aug. 13, 2019), *reconsideration denied,* No. 18MC458LGSOTW, 2019 WL 5080007 (S.D.N.Y. Oct. 10, 2019) (same).   Further, this Court need not and "should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn*, 673 F.3d at 82 (emphasis in original); see also *Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134, 137 (D. Conn. 1996) ("[S]ection 1782 does not impose the requirement that the material sought in the United States be discoverable under the laws of the foreign jurisdiction.").

   *Third*, Applicants are not attempting to circumvent foreign discovery restrictions or policies. Indeed, Applicants are victims of a fraudulent scheme, and have at significant expense set out to stop any further wrongdoing and recover funds obtained by the fraud of defendants. Applicants thus have a good faith basis for seeking this discovery. *See In re Application of Hill*, No. M19-l 17(RJH), 05CV999996, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Moreover, it appears that [petitioner] is seeking this discovery because it has a good faith basis for believing that it will be able to use the . . . documents in the Hong Kong litigation."). Accordingly, this factor weighs in favor of granting the Application.

*Fourth*, this request is neither unduly intrusive nor burdensome, as it concerns "the precise subject matter of the underlying [proceedings]." *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998). In this case, the requested document discovery and testimony would provide information about Lance Valdez and the Fund's fraudulent business practices, specifically with regard to the New York Property. The Application is "specifically and narrowly tailored" to such subject matter. *See Minatec Finance S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). Thus, the fourth *Intel* factor weighs in favor of the Court granting this Application.

Accordingly, each of the four *Intel* factors weighs in favor of granting this Application, and Applicants respectfully request that the Court grant this Application.

## **CONCLUSION**

Based on the foregoing, Applicants respectfully request that the Court issue an Order:

1. Approving Applicants' Application for discovery;

2. Granting permission for Applicants to issue the subpoenas as they appear attached as Exhibits A-E to the Declaration of Blaise U. Chow;

3. Directing 10 East 63rd Street, Inc., Amanda Wilson, Pedro Santiago, Astrid Pillay, and Charles Holzer to comply with such subpoenas in accordance with the Federal Rules of Civil Procedure and the Rules of this Court, to appear with respect to the subpoenas for deposition testimony.


Dated: New York, New York
August 21, 2020

ROPERS MAJESKI, P.C.

By: _____
         Blaise U. Chow, Esq.
750 Third Avenue, 25th Fl.
New York, New York 10017
Tel: (212) 668-5927
Fax: (212) 668-5959
blaise.chow@rmkb.com
*Attorneys for Applicants*